UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-22791-CV-WILLIAMS

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,
v.

BRENT SEAMAN, *et al.*,

    Defendants.
_____/

## **RECEIVER'S FIFTH STATUS REPORT**

Melanie E. Damian, as the court-appointed Receiver (the "Receiver") for Accanito Capital Group, LLC ("Accanito Capital"), Accanito Holdings, LLC ("Accanito Holdings"), Accanito Equity, LLC, Accanito Equity II, LLC Accanito Equity III, LLC, Accanito Equity IV, LLC, Surge LLC, and Relief Defendant, Surge Capital Ventures, LLC ("SCV") (collectively, the "Receivership Defendants"), submits her Fifth Status Report concerning the status of the Receivership for the period from October 1, 2024 to December 31, 2024 (the "Reporting Period").

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................................4

II. COMMENCEMENT OF ENFORCEMENT ACTION
    AND APPOINTMENT OF RECEIVER ..............................................................................6

III. SUMMARY OF THE OPERATIONS OF RECEIVER
     AND EFFORTS TO IMPLEMENT APPOINTMENT ORDER .......................................7

   A. Receiver's Initial Effort to Marshal and Preserve
      Assets and Records and Employment of Professionals ...........................................7

   B. Obtaining Information and Records from Defendants.............................................8

   C. Recovery of Receivership Defendants' Records
      and Assets from Third Parties..................................................................................9

      1. Recovery of Funds Held at BMO Harris ......................................................9

      2. Securing Personal Property of the
         Receivership Defendants ...............................................................................9

         a. Recovery of Jewelry from Jana Seaman..............................................9

         b. Securing Corporate Ownership Interests ..........................................10

      3. Forensic Images of Receivership Defendants' Digital Devices ..............11

      4. Forensic Images of Financial Records and Email and Cloud Computing
         Accounts of Receivership Defendants and Forensic Reconstruction
         of Receivership Defendants' Financial Transactions ...............................11

   D. Investigation of Receivership Defendants' Business
      Operations and Uses of Investor Funds .................................................................12

      1. The SEC's Claims and Receiver's Investigation Thereof .......................12

      2. Receivership Defendants' Use of Investor Funds and the Receiver's
         Investigation and Pursuit of Claims to Recover Such Funds...................12

         a. Use of Investor Funds on Personal Expenses and Transfers
            to Insiders and Third Parties and Efforts to Recover
            Those Funds..............................................................................13

         b. Trading Losses and Investigation of Claims Against
            Trading Platforms ........................................................................14

|  |  |  |  |
|---|---|---|---|
|  |  | c. | Corporate Ownership Interests and Investigation of Claims Related Thereto ................................................................... 15 |
| IV. | CASH ON HAND AND ACCRUED EXPENSES OF ESTATE ................................... 17 |
| V. | KNOWN PROPERTY OF THE RECEIVERSHIP ESTATE ........................................ 17 |
| VI. | LIQUIDATED AND UNLIQUIDATED CLAIMS OF THE RECEIVERSHIP ESTATE ......................................................................................... 18 |
| VII. | KNOWN CREDITORS OF THE RECEIVERSHIP ESTATE ...................................... 18 |
| VIII. | RECEIVER'S RECOMMENDATION .............................................................................. 19 |
| CERTIFICATE OF SERVICE ........................................................................................................ 20 |

## I. INTRODUCTION

Receivership Defendants are a group of affiliated companies that were owned and controlled by Defendant Brent Seaman. The Accanito Equity Receivership Defendants were used to collect over $35 million in investor deposits to purportedly purchase ownership interests in startup companies make profitable trades in commodities and currencies. Those investor deposits were then transferred to Receivership Defendants Accanito Capital, Accanito Holdings, and Surge LLC and spent on Defendant Seaman and his family's personal expenses and lavish lifestyle, exorbitant operating costs, high-risk trading losses, and ownership interests in four small companies, three of which did not produce any revenues for the Receivership Defendants and were otherwise dissipated for the benefit of Seaman and his wife and family.

Upon her appointment as Receiver on October 27, 2023, Ms. Damian took possession, custody, and control of all previously identified funds, assets, and records of the Receivership Defendants (collectively, the "Estate").

As of the end of the Reporting Period, the Receiver had recovered a total of $3,868,431.71, including funds in accounts, disgorgement payments, the proceeds of the liquidation of physical assets, and recoveries pursuant to the Estate's claims against third parties, investors who received net gains, insiders, and affiliates. A Standardized Fund Accounting Report, reflecting inter alia the Receivership Estate's receipts and disbursements for the Reporting Period is attached hereto as **Exhibit A**. In particular, the Receiver recovered the funds held in the Receivership Defendants' banking and trading accounts, totaling $1,966,237.86, $1,425,394[1] in disgorgement payments from Relief Defendants Jana Seaman ("Ms. Seaman") and Valo Holdings Group, LLC ("Valo"),

---

[1] Relief Defendants Valo and Ms. Seaman have satisfied their disgorgement obligations pursuant to their settlements with the Securities and Exchange Commission ("SEC").

$10,000 from Defendant Seaman's counsel's trust account, and settlement proceeds totaling $541,407.85 from prosecution of the Estate's fraudulent transfer and unjust enrichment claims against investors who had received net gains and third parties who had received funds from the Accanito scheme without providing reasonably equivalent value to the Receivership Defendants.

In addition, during a prior reporting period, the Receiver recovered from Jana Seaman jewelry and a watch purchased by Surge LLC for $328,409.43 and sold the watch (a Rolex) for $15,650 after receiving three purchase offers. Towards the end of this Reporting Period, the Receiver recovered a previously undisclosed Chopard watch that Surge LLC had purchased for Jana Seaman using $76,905.15 in investor funds. The Receiver is soliciting offers from jewelers, dealers, and retail purchasers to purchase the jewelry and watch and will sell them to the purchasers who make the highest and best offers.

During the Reporting Period, the Receiver also commenced a lawsuit against certain third parties, an investor who received a net gain, Mr. Seaman's ex-wife, and the Seamans' former counsel and landlord, asserting claims for fraudulent transfer and unjust enrichment.

The Receiver also continued to investigate the Receivership Defendants' investments in four small companies and quantified the outstanding debts owed to the Receivership Defendants. She is pursuing the collection of those debts from Blue Diamond Home Solutions LLC by securing the turnover of a vehicle, two trailers, and tools. The Receiver obtained possession of the vehicle and sold it to CarMax at the end of the Reporting Period.

The Receiver has also demanded payment of outstanding distributions and turnover of corporate ownership and financial records from Surge Trader LLC and is reviewing the records produced by Surge Trader LLC. The Receiver will continue her efforts to maximize the value of the Estate's ownership interests in those companies.

The Receiver also filed a lawsuit for violations of the civil RICO Act on behalf of SCV against Deel Inc. for misconduct perpetrated while acting as an unlicensed money transmitter.

Finally, the Receiver made an initial distribution to investors equal to 10% of their respective allowed claim amounts.

**II.   COMMENCEMENT OF ENFORCEMENT ACTION AND APPOINTMENT OF RECEIVER**

On June 27, 2023, the SEC filed the Complaint for Injunctive and Other Relief and Demand for Jury Trial against individual Defendant Brent Seaman ("Seaman") and the Receivership Defendants commencing the enforcement action (the "Enforcement Action") for violations of securities laws.  *See* ECF No.1.  Then the SEC filed its Unopposed Motion for Asset Freeze [ECF No. 4] and Agreed Motion and Memorandum of Law for Appointment of Receiver [ECF No. 5].  The Court granted both Motions on October 27, 2023.  *See* ECF No. 17 and 18, respectively.  In the October 27, 2023 Appointment Order, the Receiver was appointed over the Receivership Defendants and charged with carrying out the mandates of that Order.  *See* ECF No. 18.

Also on October 27, 2023, the SEC filed Plaintiff's Unopposed Motion for Entry of Judgments Against Defendants Brent Seaman; Accanito Equity LLC; Accanito Equity II, LLC; Accanito Equity III, LLC; Accanito Equity IV, LLC; Accanito Capital Group, LLC; Surge, LLC; and Accanito Holdings [ECF No. 6], attaching the following consents for entry of judgment:

(1)   Consent of Defendant Bren Seaman [ECF No. 6-1]

(2)   Consent of Defendant Accanito Equity, LLC [ECF No. 6-2]

(3)   Consent of Defendant Accanito Equity II, LLC [ECF No. 6-3]

(4)   Consent of Defendant Accanito Equity III, LLC [ECF No. 6-4]

(5)   Consent of Defendant Accanito Equity IV, LLC [ECF No. 6-5]

(6)   Consent of Defendant Accanito Capital Group, LLC [ECF No. 6-6]

  (7) Consent of Defendant Surge, LLC [ECF No. 6-7]

  (8) Consent of Defendant Accanito Holdings, LLC [ECF No. 6-8]

On January 9, 2024, during a prior reporting period, this Court entered the following final judgments:

  (1) Final Judgment as to Defendant Accanito Capital Group, LLC [ECF No. 43]

  (2) Final Judgment as to Defendant Accanito Equity II, LLC [ECF No. 44]

  (3) Final Judgment as to Defendant Accanito Equity III, LLC [ECF No. 45]

  (4) Final Judgment as to Defendant Accanito Equity IV, LLC [ECF No. 46]

  (5) Final Judgment as to Defendant Accanito Equity, LLC [ECF No. 47]

  (6) Final Judgment as to Defendant Accanito Holdings, LLC [ECF No. 48]

  (7) Final Judgment as to Defendant Brent Seaman [ECF No. 49]

  (8) Final Judgment as to Defendant Surge, LLC [ECF No. 50]

In addition, during a prior reporting period, the Receiver and the SEC negotiated a consent and final monetary judgment for $1,882,423.14 to be entered against Relief Defendant SCV. The SEC also reached an agreement with Brent Seaman as to the final monetary judgment for $4,617,241 to be entered against him. During this Reporting Period, the Court entered those judgments. *See* ECF Nos. 94 (Judgment against SCV) and 95 (Judgment against Mr. Seaman). Mr. Seaman has until January 12, 2025, to pay the amount of the judgment against him. After that date, the SEC may commence collection efforts against him. Any amounts recovered from Mr. Seaman will be distributed through the Estate.

**III.** **SUMMARY OF THE OPERATIONS OF RECEIVER AND EFFORTS TO IMPLEMENT APPOINTMENT ORDER**

 **A.** **Receiver's Initial Efforts to Marshal and Preserve Assets and Records and Employment of Professionals**

Pursuant to the Appointment Order, the Receiver was granted all powers, rights, and

control over the Receivership Defendants previously held by their former management.  *See* ECF No. 18, at § 2.  In particular, the Receiver was authorized:

- To use reasonable efforts to determine the nature, location, and value of all property interests of the Receivership Defendants.

- To take custody, control, and possession from third parties of all Receivership Property and records relevant thereto from the Receivership Defendants.

- To manage, control, operate, and maintain the Receivership Estate and hold in her possession, custody, and control all Receivership Property, pending further Order of this Court.

- To use Receivership Property for the benefit of the Receivership Estate, making payments and disbursements, and incurring expenses as may be necessary or advisable in the ordinary course of business and discharging her duties as Receiver.

- To engage and employ persons in her discretion to assist her in carrying out her duties and responsibilities hereunder.

*See id*.

### B. Obtaining Information and Records from Defendants

Paragraphs 8-12 of the Appointment Order require Defendants to turn over certain financial and other information regarding the Receivership Defendants' assets and operations to the Receiver and the SEC.  *See* ECF No. 18 at pp. 4-6.  During prior reporting periods, the Receiver worked with her forensic accountant to analyze the documents received from third parties pursuant to subpoenas issued by the Receiver in this case and to complete the forensic bank reconstruction for the Receivership Defendants, to determine the intracompany debts owed by the Receivership Defendants and their affiliated entities, and to determine the value of the Estate's fraudulent transfer and unjust enrichment claims.

**C.   Recovery of Receivership Defendants' Records and Assets from Third Parties**

During the Reporting Period, the Receiver pursued responses to various subpoenas to Surge Trader LLC and financial institutions at which it held accounts to *inter alia* determine the Estate's ownership interest in and right to distributions from that company. The Receiver and her forensic accountants reviewed the productions from Surge Trader LLC and the various banks and credit card companies at which Surge Trader LLC held accounts. And, the Receiver responded to inquiries made by investors concerning their respective investments in the various Accanito Equity companies that they believed involved Surge Trader LLC. The Receiver continues to investigate whether the Estate holds viable claims against Surge Trader LLC and/or its members.

**1.   Recovery of Funds Held at BMO Harris Bank**

The Receiver has now recovered the balances in all known banking and trading accounts held in Receivership Defendants' names at BMW Harris Bank.

**2.   Securing Personal Property of the Receivership Defendants**

In addition to recovering the bank account balances listed above, the Receiver secured the Receivership Defendants' valuable personal property, including jewelry purchased by Surge LLC, and ownership interest in four small companies.

**a.   Recovery of Jewelry from Jana Seaman and Efforts to sell them**

During a prior reporting period, Jana Seaman turned over to the Receiver seven items of jewelry and a Rolex watch that Surge LLC had purchased for $328,409.43 using investor funds. The Receiver then worked on locating purchasers for these items, soliciting offers from retail and wholesale jewelers, watch dealers, and retail customers. The Receiver sold the Rolex for $15,650 to a retail customer who made the highest offer, received three bulk offers for the jewelry all under

market value, and listed the items for sale on Ebay but did not receive any offers after lowering the sale prices several times.

During this Reporting Period, the Receiver recovered a Chopard watch from Ms. Seaman that Surge LLC had purchased for her for $76,905.15 using investor funds. The Receiver began soliciting offers to purchase this watch and continued her efforts to locate purchasers for the other items of jewelry.

### b. Securing Corporate Ownership Interests

In addition to the bank account balances and jewelry, the Receiver also took control of Receivership Defendant Accanito Capital Group LLC's ownership interests in Surge Trader LLC, Blue Diamond Home Solutions Dallas LLC, and Blue Diamond Home Solutions LLC. The Receiver, together with her forensic accountants, investigated these ownership interests, whether they are an accurate representation of the Receivership Defendants' ownership in these entities, whether the entities have assets that are property of the Receivership Estate, and whether these corporate interests may be liquidated to benefit the Estate. The Receiver has secured the turnover of a pickup truck, two trailers, and tools from Blue Diamond Home Solutions LLC and determined that the Blue Diamond entities do not have any other significant assets or operations. Shortly after the close of the Reporting Period, the Receiver sold the pickup truck to CarMax for $18,000 and collected the balance of the sale proceeds equal to $2,783.94 after payment of an outstanding loan from GM Financial secured by the truck. The Receiver is working with an auction company to sell the two trailers and the tools during the next reporting period.

The Receiver's investigation into Surge Trader LLC is ongoing. At the commencement of the receivership, Surge Trader LLC had significant assets and was producing income. Thus, the Receiver demanded that Surge Trader LLC make all due and owing monthly distribution payments to the Estate. Such payments have remained outstanding since December 2023. Surge Trader

LLC's principals claim that Surge Trader LLC has ceased operations and does not have sufficient income to make any distributions to shareholders. The Receiver is investigating Surge Trader LLC's activities and representations. The Receiver has also served various subpoenas on Surge Trader LLC and financial institutions at Surge Transfer LLC had held accounts, received productions of documents, reviewed the productions, and demanded additional compliance with those subpoenas. On September 30, 2024, the Court entered an Order compelling Surge Trader LLC to comply with the Receiver's subpoena by producing additional records. *See* ECF No. 80. Surge Trader LLC has now produced some of the documents compelled by that Order but continues to withhold documents, requiring the Receiver to seek another discovery hearing before the Magistrate Judge. The Receiver is assessing the Estate's potential claims against Surge Trader LLC or others involved with Surge Trader LLC.

### 3. Forensic Images of Receivership Defendants' Digital Devices

During a prior reporting period, the Receiver completed her review of the forensic images of the two laptops, one desktop computer, and a box of hard copy files obtained from the Receivership Defendants' office.

### 4. Forensic Images of Financial Records and Email and Cloud Computing Accounts of Receivership Defendants and Forensic Reconstruction of Receivership Defendants' Financial Transactions

The Receiver's forensic IT professional imaged Receivership Defendants' QuickBooks accounts for Accanito Capital, Accanito Holdings, Surge LLC, and SCV. During the Reporting Period, the Receiver's forensic accountant completed a reconstruction of Surge Trader LLC's financial transactions. That bank account reconstruction is being used to support claims for voidable transfers and recoverable funds traceable to defrauded investors and to determine the Receivership Defendants' ownership interest in Surge Trader LLC and its assets.

### D. Investigation of Receivership Defendants' Business Operations and Uses of Investor Funds

#### 1. The SEC's Claims and Receiver's Investigation Thereof

In its Complaint, the SEC alleges that from at least June 2019 until September 2022 (the Relevant Period) Defendant Seaman and the Receivership Defendants raised approximately $35 million from approximately 60 investors. To carry out the scheme, Defendant Seaman and the Receivership Defendants promised investors guaranteed returns and that investor funds would be used to invest in startup companies and to make profitable trades in commodities and currencies. These representations were false. Investor deposits were transferred to Surge, LLC and Accanito Capital and used to trade foreign currencies resulting in significant losses, to make Ponzi-like distributions to investors, and for expenditures to benefit Defendant Seaman and his relatives. *See* ECF No. 1. As a result of the conduct alleged in the Complaint, the SEC commenced the Enforcement Action for violations of securities laws against Defendant Seaman and the Receivership Defendants.

The Receiver's investigation of the Receivership Defendants' business operations, financial records, and dealings with investors has revealed that the foregoing allegations in the SEC's Complaint accurately describe the actual operations of the Receivership Defendants.

#### 2. Receivership Defendants' Use of Investor Funds and the Receiver's Investigation and Pursuit of Claims to Recover Such Funds

During prior reporting periods, the Receiver, together with her forensic accountant, traced the flow of investor funds through intracompany transfers between and among Receivership Defendants as follows:

As stated in the Receiver's prior status reports, investors invested in the Receivership Defendants by sending their investment contributions to Accanito Equity LLC, Accanito Equity II, LLC, Accanito Equity III, LLC and/or Accanito Equity IV, LLC. Investors believed that their

funds were purchasing private equity in a diverse group of startup and technology companies. In reality, very little private equity was ever purchased in the name of the Receivership Defendants. And, of the four companies in which Receivership Defendants invested, only Surge Trader LLC was purportedly profitable, and according to the operating agreement forming that company Receivership Defendants were only granted a 5% ownership interest in that company. So, while some investors received monthly distributions, those distributions did not come from Receivership Defendants' net profits, but rather from new investor deposits.

      a.    **Use of Investor Funds on Personal Expenses and Transfers to Insiders and Third Parties and Efforts to Recover Those Funds**

The Receiver has traced the use of over $8.5 million in investor funds to pay for personal expenses for Defendant Seaman and his family and to make transfers to insiders. Indeed, instead of purchasing private equity, investor funds were transferred to Accanito Capital, Accanito Holdings, and Surge LLC and used to fund Defendant Seaman and his family's lavish lifestyle including private jet flights, luxury ski vacations, exotic cars, expensive jewelry, and nearly a half million dollars spent on annual rent for the Seamans' residence. In addition, investor funds were used to pay for Mr. Seaman's sizeable divorce settlement to his ex-wife and to make interest-free loans and to pay significant fees to Jana Seaman and her entities Valo and United in Assignment, LLC. The Receiver is currently pursuing recovery of certain voidable transfers, including transfers to an investor who received a net gain, to Mr. Seaman's ex-wife, to Mr. Seaman's former counsel, and to the Seamans' residential landlord. Those third parties have refused to return to the Estate the misappropriated investor funds in their possession, and the Receiver filed a lawsuit against them in the District Court for the Middle District of Florida with this Court's and the SEC's approval. *See* ECF No. 91. That action is not yet at issue as several Defendants have requested extensions of time to respond to the Receiver's complaint.

The Receiver has successfully settled some of the Estate's voidable transfer claims against certain third-party recipients of investor funds. To date, the Receiver recovered $541,407.85 from those third parties pursuant to settlement and release agreements approved by this Court. *See* ECF No. 91.[2]

### b.  Trading Losses and Investigation of Claims Against Trading Platforms

Investor funds were also used to fund high-risk, online foreign currency trading resulting in significant losses of capital and payment of high commissions for accounts held in the name of Surge LLC and Surge Capital Ventures LLC. The Receiver has traced the transfer of at least $20.1 million in investor funds to 11 foreign currency exchange trading accounts held by Surge LLC. Upon liquidation of those 11 trading accounts, only $508,719.94 of that $20.1 million remained and was recovered by the Receiver. Those trading accounts are hosted by online platforms registered in foreign countries. The trading accounts were used to conduct high-risk trading and suffered huge losses of investor funds. In addition to the trading losses, Surge LLC paid high commissions to the trading platforms. The Receiver is investigating the amounts of commissions and fees paid to both the trading platforms and the introducing broker that connected Surge LLC with those foreign platforms to determine whether the Estate holds viable claims against those third parties.

---

[2] This recovery amount includes funds collected for two settlements that have not yet been approved by the Court. One of those settlements was entered into after the Receiver had filed her Motion to approve various settlements. As such, the Receiver will file a motion to approve that settlement during the next reporting period. With respect to the other settlement, at the hearing on the Receiver's Motion to approve the various settlements, the Court ruled that it would not approve the settlement until the underlying confidential settlement and release agreement was filed with the Court. Thereafter, the Receiver informed counsel for the settling party of the Court's ruling and the settling party agreed to the submission of the confidential settlement and release agreement to the Court under a notice of filing. Accordingly, after the Reporting Period, the Receiver filed a notice of filing and motion to approve that agreement.

### c.  Corporate Ownership Interests and Investigation of Claims Related Thereto

The Receivership Defendants' remaining assets include interests in small, closely held companies, including 99% ownership of Blue Diamond Home Solutions of Dallas LLC (Dallas, TX), 5% ownership of Blue Diamond Home Solutions LLC (Naples, FL), 5% ownership of Surge Trader LLC, and 100% ownership of Surge Capital Ventures LLC, and potential claims against insiders and third parties that received funds and assets from the Receivership Defendants.

During the Reporting Period, the Receiver with her forensic accountant's assistance determined the outstanding debt owed by those companies to the Receivership Defendants and is pursuing the Estate's right to collect those debts.

None of these closely held companies other than Surge Trader LLC ever produced revenue for the Receivership Defendants.  Surge Trader LLC ceased making monthly distributions pursuant to Accanito Capital's 5% ownership interest at the end of November 2023.  Thereafter, the Receiver sent Surge Trader LLC several demands for the unpaid and all future distributions owed to Accanito Capital and a subpoena seeking corporate and financial records needed to audit the revenues and expenditures of the company to determine the amount of monthly distributions owed to the Receivership Estate.  The Receiver also sent another demand letter and subpoena to Surge Trader LLC seeking additional information and corporate and financial records.  The Receiver's investigation into Surge Trader LLC's operations and finances revealed that, during the Relevant Period, Surge Trader LLC paid large distributions to its majority members Valo and Oceanfront Staffing LLC ("Oceanfront") until Oceanfront sold its membership interest in Surge Trader LLC to Valo for an undisclosed sum.  The Receiver has subpoenaed and compelled the production of the records of that sale, but Surge Trader LLC objected.  Pursuant to this Court's Order, Surge

Trader LLC has begun to produce those records. Surge Trader LLC also paid hundreds of thousands of dollars each month to Jana Seaman's credit cards. The Receiver subpoenaed those credit card records from Surge Trader LLC, reviewed the limited statements that were produced to determine whether those expenses were incurred for the benefit of Surge Trader LLC's business, and is seeking additional statements from Surge Trader LLC and third parties to complete her investigation. After spending its sizeable revenues on the aforementioned expenses, Surge Trader LLC has ceased operations and does not currently have sufficient revenue to make monthly distribution payments to its members, including Accanito Capital. The Receiver continues to investigate whether the Estate has any claims for the recovery of fraudulent transfers and other misconduct against Surge Trader LLC.

According to the forensic bank account reconstruction, SCV currently owes approximately $1.8 million to the Receivership Defendants pursuant to a loan, funded in large part with investor funds. The Receiver continues investigating the use of investor funds that passed through SCV. In particular, SCV transferred over $2.2 million to Deel, Inc., as a payment processor, to pay independent contractors who were working for SCV. The Receiver reviewed all invoices, contracts and supporting documents from Deel Inc. underlying the $2.2 million in payments derived from investor funds that Deel Inc. had received from SCV. And, the Receiver investigated the services provided by those independent contractors and whether they benefitted the Receivership Defendants or third parties.

Shortly after the close of this Reporting Period, the Receiver, with this Court's approval, filed a civil RICO Act lawsuit on behalf of SCV against Deel Inc. and affiliated parties in the District Court for the Southern District of Florida. *See* ECF No. 91. The complaint alleges a single count of civil RICO Act violations arising from the defendants' operation as an unlicensed money transmitter contrary to state and federal law and related money laundering and other

BSA/AML/OFAC violations. The Receiver seeks damages, including the refund of all fees paid, and seeks injunctive relief to prevent future violations. The Receiver retained specialized class action counsel on a contingency fee basis, with this Court's approval, to represent her in that action. *See id*.

IV.  **CASH ON HAND AND ACCRUED EXPENSES OF ESTATE**

The Receiver presently holds $897,521.54 in cash on hand in the Estate's fiduciary account at City National Bank in Miami, Florida. *See* Standardized Fund Accounting Report, attached hereto as Exhibit A.

During the Reporting Period, the Receivership Estate incurred administrative expenses in the form of fees and costs of the Receiver and her professionals for the work they performed in connection with fulfilling the Receiver's duties under the Court's Orders. Pursuant to the Appointment Order, the Receiver will file an application seeking approval and payment of those fees and costs from the funds the Receiver has marshaled and deposited into the Estate's fiduciary account since she was appointed. During that same time period, the Receiver made disbursements from the fiduciary account for Court-approved professional fees, necessary expenses to preserve and administer the Estate, and to preserve all of the Receivership Defendants' business records. *See* Exhibit A.

V.  **KNOWN PROPERTY OF THE RECEIVERSHIP ESTATE**

The Receiver is in possession, custody, or control of the following assets of the Receivership Estate:

- $897,521.54 in cash on hand, in the Estate's fiduciary account at City National Bank in Miami, Florida;

- Jewelry and a watch purchased by Surge LLC recovered from Jana Seaman;

- 99% ownership interest in Blue Diamond Home Solutions of Dallas (Dallas, TX);

17

- 5% ownership interest in Blue Diamond Home Solutions (Naples, FL);

- At least 5% ownership interest in Surge Trader LLC;

- One desktop computer and two laptop computers; and

- Claims against insiders and third parties.

- Claim against Deel, Inc.

## VI. LIQUIDATED AND UNLIQUIDATED CLAIMS OF THE RECEIVERSHIP ESTATE

Throughout this Reporting Period, the Receiver and her professionals pursued the recovery of additional funds or other assets belonging to or improperly transferred from the Receivership Defendants, including affiliates, investors, relatives, and third parties who are in possession of or received funds or other assets traceable to the Receivership Defendants' business or investors.

The Receiver and her professionals will continue pursuing claims the Estate may have to recover funds or other assets belonging to or improperly transferred from the Receivership Defendants, as discussed above, including without limitation turnover and fraudulent transfer claims against affiliates, investors, relatives, and third parties, as is appropriate and authorized by the Appointment Order. Further, the Receiver will investigate the Estate's potential claims against third parties that may have facilitated the alleged misconduct of the Receivership Defendants or otherwise contributed to the damages alleged to have been sustained by investors.

The Receiver is not aware of any other liquidated claims of the Estate at this time.

## VII. KNOWN CREDITORS OF THE RECEIVERSHIP ESTATE

The creditors of the Estate are made up of the Receivership Defendants' investors and a couple of investors who also claim to be lenders to the Receivership Defendants, all of whom were treated as investors in the claims process.

During the prior reporting period and this Reporting Period, the Receiver administered the Court-approved claims process. *See* ECF No. 73. After processing the investors' completed and submitted claim forms, the Receiver determined that 61 investors invested $34,219,532.50 with the Receivership Defendants and into an online trading platform at the direction of Defendant Brent Seaman. With the assistance of her forensic accountant, the Receiver determined that investors suffered net losses totaling $28,100,318.62.

During this Reporting Period, the Receiver made a final determination on all allowed claim amounts and sent all investors her determinations of their allowed claim amounts. No investor disputed the Receiver's final determination. She then sought and obtained Court approval of the investors' allowed claim amounts totaling $28,100,318.62 and the proposed initial distribution totaling $2,810,067.93. *See* ECF Nos. 87 (Motion) and 91 (Omnibus Order). The Receiver then sent investors their initial distribution payments, communicating with each investor to confirm their payment instructions as required by bank policy. During the Reporting Period, the Receiver distributed $2,629,222.75 to investors. The remaining distributions that had not been sent out as of the close of the Reporting Period were sent out prior to the filing of this Report and will appear on the Standardized Fund Accounting Report filed with the next status report.

**VIII.   RECEIVER'S RECOMMENDATION**

The Receiver and her professionals appreciate the opportunity to assist the Court in this matter. The Receiver recommends a continuation of the Receivership, as discussed herein, to fulfill the Receiver's duties under the Court's Orders, with the focus on affording the most cost-effective approach to preserving the assets, maximizing the ultimate recovery by the Receivership Estate, carrying out the directives of this Court, and completing the Court-approved distribution plan during the next reporting period.

Respectfully submitted this 13th day of January, 2025.

        DAMIAN | VALORI | CULMO
        1000 Brickell Avenue, Suite 1020
        Miami, Florida 33131
        Telephone: (305) 371-3960
        Facsimile: (305) 371-3965
        Email: kmurena@dvllp.com

        By: */s/Kenneth Dante Murena*
        Kenneth Dante Murena, Esq.
        Florida Bar No. 147486
        *Counsel for the Receivership Entities, for*
        *Relief Defendant Surge Capital Ventures*
        *LLC, and for Receiver, Melanie E. Damian*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via electronic transmission via this Court's CM/ECF filing system on January 13, 2025, on all counsel or parties who have appeared in the above-styled action.

        */s/Kenneth Dante Murena*
        Kenneth Dante Murena, Esq.
        *Counsel for the Receivership Entities, for*
        *Relief Defendant Surge Capital Ventures*
        *LLC, and for Receiver, Melanie E. Damian*