**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 23-cv-22791-WILLIAMS/REID

SECURITIES AND EXCHANGE
COMMISSION,

Plaintiff,

v.

BRENT SEAMAN, ACCANITO EQUITY,
LLC; ACCANITO EQUITY II, LLC;
ACCANITO EQUITY III, LLC;
ACCANITO EQUITY IV, LLC;
ACCANITO CAPITAL GROUP, LLC;
ACCANITO HOLDINGS, LLC; SURGE,
LLC,

Defendants.

_____/

**UNOPPOSED MOTION OF RECEIVER**
**FOR APPROVAL OF SETTLEMENT AGREEMENT BETWEEN**
**THE RECEIVER AND DEFENDANT THEODORE L. STAUB, III**

Melanie E. Damian, the court-appointed receiver ("Receiver") for the Receivership Entities

in the above-captioned Securities and Exchange Commission ("SEC") enforcement action ("SEC

Enforcement Action"),[1] pursuant to her obligations under the *Order Appointing Receiver* [ECF

No. 18] ("Appointment Order") entered in this SEC Enforcement Action, seeks approval of the

settlement between the Receiver and Defendant Theodore L. Staub, III ("Settling Party"), who is

proceeding *pro se* in the Ancillary Proceeding pending against him and other defendants captioned

*Damian v. Staub,* Case No. 24-cv-00977-JES (M.D. Fla.) ("Claw-Back Action").

---

[1] The Receiver was appointed receiver for the following entities controlled by Brent A. Seaman
and used in his Ponzi scheme: Accanito Capital Group, LLC ("Accanito Capital"), Accanito
Accanito Equity, LLC, Accanito Equity II, LLC, Accanito Equity, III, LLC, Accanito Equity IV,
LLC, (all collectively the "Accanito Entities") and Surge, LLC ("Surge"). The Receiver sometimes
refers to the Accanito Entities and Surge together as the "Receivership Entities".

The Receiver attaches to this motion as ***Exhibit A*** a true and correct copy of the Parties' fully executed Settlement Agreement. ***Settling Party has made all payments required under the Settlement Agreement***. The Receiver requests that the Court approve the Settlement Agreement and enter an order substantially in the form of the proposed order that the Receiver attaches to this motion as ***Exhibit B*** ("Settlement Approval Order").

The Receiver confirmed the agreement to this settlement with counsel for SEC prior to executing the Settlement Agreement.

## PERTINENT FACTUAL BACKGROUND

On July 27, 2023, the SEC filed its Complaint [ECF No. 1] against the Receivership Defendants and Relief Defendants Jana Seaman and Valo Holdings Group, LLC initiating the SEC Enforcement Action.

On July 27, 2023, the SEC filed its Unopposed Motion for Asset Freeze [ECF No. 4] and Agreed Motion and Memorandum of Law for Appointment of Receiver [ECF No. 5]. The Court granted both motions on October 27, 2023. *See* ECF No. 17 and 18, respectively. In the Appointment Order, the Receiver was appointed receiver for the "Receivership Estate" and the Receivership Defendants and was charged with carrying out the mandates of that order. *See* ECF No. 18. The Court authorized the Receiver to "bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging her duties as Receiver." *Id.* Such actions include, without limitation, actions under the Florida Uniform Fraudulent Transfer Act to recover transfers that the Receivership Defendants had made to third parties without receipt of reasonably equivalent value, while the Receivership Defendants were operating a Ponzi scheme and engaging in unlawful and fraudulent offerings in violation of the anti-fraud and registration provisions of federal securities

laws.

As part of the SEC Enforcement Action, the SEC and its forensic accountants reviewed and analyzed the financial records of the Receivership Defendants, including their accounting records and various account statements, cancelled checks, deposit slips, and wire transfer confirmations from financial institutions and those records reveal that Settling Party invested a total of $413,571.08 with one or more of the Receivership Defendants and received back a total sum of $766,962.40 from the Receivership Defendants (collectively, the "Transfers"), resulting in a net gain of $353,391.32 (the "Net Gain").

Pursuant to the Appointment Order, the Receiver sent a letter to Settling Party advising him of the Receiver's intention to seek to recover the Net Gain that the Settling Party had received, for the benefit of the investors the Receivership Defendants had defrauded and invited discussions concerning pre-suit resolution, but such resolution pre-suit did not occur.

The Receiver sued Settling Party, along with other defendants, in the Claw-Back Action. Bankruptcy counsel for Settling Party contacted the Receiver's counsel after Settling Party was personally served with process in the Claw-Back Action and informed the Receiver's counsel that Settling Party intended to file Chapter 7 bankruptcy instead of defending against the claims asserted in the Claw-Back Acton due to Settling Party's financial condition.

Counsel for the Receiver and Settling Party, on a *pro se* basis, commenced settlement negotiations that, among other things, included Settling Party providing the Receiver's counsel with substantial financial disclosures in the form of, including without limitation to, bank and investment account statements, federal income tax returns, a narrative explanation of the use of the Net Gains, deeds, a marital settlement agreement and other related documents, (collectively, the "Financial Disclosures"), which the Receiver agreed to keep confidential except as otherwise

necessary to obtain a court order approving the Settlement Agreement.

After Settling Party's provision of the Financial Disclosures, the Receiver and the Settling Party negotiated in good faith a resolution of the Receiver's claims and any and all other disputes by and between the Parties, including, but not limited to, any disputes associated with the Transfers, the Net Gains, and the Claw-Back Action (collectively "Disputes"), which resolution provided for a payment by Settling Party to the Receiver and other terms and conditions, as more fully set forth below.

### SUMMARY OF MATERIAL TERMS OF THE SETTLEMENT AGREEMENT

The Settlement Agreement provides for, among other things, the following material terms:[2]

1. ***Settlement Payment***. Settling Party agreed to and has paid a $10,000 initial payment and 50% of the net sale proceeds from the closing of the sale of his homestead property in the amount of $101,424.33, which he agreed to undertake to fund the obligations imposed by the Settlement Agreement. *See* Settlement Agreement p. 3, § II. B.

2. ***Releases***. Effective upon the latter of court-approval of the Settlement Agreement or the Receiver's receipt of the Settlement Payment, the Parties agreed to release each other from any and all claims they brought or could have brought against each other, other than for claims relating to enforcement of the Settlement Agreement. *See id.* p. 4-5, § II. E.

3. ***Default Provisions***. Settling Party agreed to entry of a consent judgment in the amount of $125,000 in the event he defaulted under the terms of the Settlement Agreement. He has made the required payment so the default provisions are now moot, provided the Settlement Agreement is approved by the Court. *See id.* pp. 3-4, § II. D.

4. ***Court Approval***. The effectiveness of the Settlement Agreement is conditioned upon approval by this Court. *See id.* p. 3,

---

[2]The Receiver provides this summary of the material terms of the Settlement Agreement for the reader's convenience only and directs the reader to the actual terms of the Settlement Agreement, which are the only operative and controlling terms, for further analysis if desired. Capitalized terms not otherwise defined in this motion shall have the meaning ascribed in the Settlement Agreement.

§ II. C.

5.      ***Dismissal with Prejudice***. Within seven (7) days after the later of court approval of the Settlement Agreement or the Receiver's receipt of the Settlement Payment, the Receiver shall file a joint notice of dismissal *with prejudice* of the claims asserted against Settling Party in the Claw-Back Action, with each party to bear its own attorneys' fees and costs. *See id.* p. 6, § II. J.

6.      ***Attorneys' Fees and Costs***. The Receiver and Settling Party agree to bear their own attorneys' fees and costs incurred associated with the claims against Settling Party in the SEC Enforcement and the Claw-Back Action. *See id.* p. 8, § XI.

## MEMORANDUM OF LAW

### A. The Settlement Agreement Embodies a Fair, Adequate, Reasonable, and Collusion Free Settlement, Entered by the Parties in Good Faith, and After the Receiver's Diligent Investigation and Evaluation.

"A district court has broad powers and wide discretion to determine relief in an equity receivership." *SEC. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992). Part of this relief incorporates empowering the court-appointed receiver to administer assets of the receivership estate, which includes asserting claims against third parties and settling those asserted claims. The learned treatise on federal equity receiverships by Clark clearly makes this point:

> Since the court has authority to authorize a receiver to collect assets of a corporation, it has the further authority to authorize the receiver to sue to collect the assets of the corporation. It naturally follows, as a necessary corollary of the foregoing, that the receiver has the power, when so authorized by the court, to compromise claims either for or against the receivership and whether in suit or not in suit.

3 Ralph Ewing Clark, *A Treatise on the Law and Practice of Receivers*, § 770 (3d ed. 1959). Further, district courts have jurisdiction over the subject matter of claims that are ancillary to the receivership and SEC enforcement actions and settlement agreements related to those ancillary claims. *SEC v. Pinnacle Dev., Partners, LLC*, No. 06 CV 2431, 2008 U.S. Dist. LEXIS 125910, at *7 (N.D. Ga. June 1, 2008) ("Because the Receiver's claims against Kunkel are ancillary to the

receivership and the SEC Enforcement Action, this Court has jurisdiction over the subject matter of the claims and the Settlement Agreement.").

When considering a settlement proposed for approval by a court-appointed equity receiver, the court does not "substitute its judgment for that of counsel" but instead "[it] is called upon to be impartial and neutral, favoring neither the proponents of the settlement nor those who are opposed or absent." *SEC v. Pinnacle Dev., Partners, LLC*, 2008 U.S. Dist. LEXIS 125910, at *8. Rather, to approve a settlement offered by a court-appointed receiver in a federal equity receivership, the district court must find that the settlement is fair, adequate, and reasonable, and not the product of collusion between the parties. *See Sterling v. Steward*, 158 F.3d 1199, 1202-1203 (11th Cir. 1998).

The Receiver demonstrates the Settlement Agreement meets this settlement approval legal standard below.

### 1. The Parties' Settlement Agreement Represents a Fair Settlement.

To determine whether a settlement in a federal equity receivership proceeding is fair, courts in the Eleventh Circuit examine the following six fairness factors: "(1) the likelihood of success; (2) the range of possible [recovery]; (3) the point on or below the range of [recovery] at which settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Sterling*, 158 F.3d at 1203 n.6 (adopting the six-factor test for fairness enunciated in *Bennett v. Behring Corp.*, 737 F.2d 982, 984 (11th Cir. 1984)). The Eleventh Circuit has told us that "[d]etermining the fairness of the settlement is left to the sound discretion of the trial court and [it] will not overturn the court's decision absent a clear showing of abuse of that discretion." *Id.* at 1202-1203.

Here, the Court should approve the Settlement Agreement as fair because the settlement is the product of the Receiver's exercise of her business judgment and her evaluation of *Sterling*'s six fairness factors, each of which is addressed below.

### a. Likelihood of Success

Courts in this district defer to their appointed receivers' litigation risk analyses when evaluating settlements for approval. *See SEC v. Creative Cap. Consortium*, LLC, No. 08-81565-CV-HURLEY/HOPKINS, 2014 U.S. Dist. LEXIS 196617, at *3 (S.D. Fla. Dec. 30, 2014) ("In defending the Settlement, Receiver asserts that the TD Arbitration had a limited likelihood of success. This is especially due to the uncertainty that would arise from prosecuting a FUFTA claim before an arbitration panel unfamiliar with Florida law.").

Here, Settling Party advised the Receiver that he did not intend to engage counsel and defend against the claims asserted against him in the Claw-Back Action and, instead, would have filed an individual Chapter 7 bankruptcy case if a settlement was not reached. Under these circumstances, the likelihood of success on the merits factor requires an atypical analysis. This is because if Settling Party filed bankruptcy the Claw-Back Action would be stayed, and the Receiver would then file a claim in Settling Party's Chapter 7 bankruptcy case. As such, analysis of recovery in the Chapter 7 bankruptcy case was required rather than analysis of prevailing in the Claw-Back Action. The Receiver, therefore, focused her analysis on whether any claim filed in Settling Party's bankruptcy case would lead to a recovery to measure the likelihood of success factor of *Sterling's* six factor fairness test.

Under this framework, Settling Party's Financial Disclosures provided support for his position that he was likely eligible for a Chapter 7 discharge, which may have discharged the Receiver's claim against him in the Claw-Back Action, leaving the only source of recovery from

his Chapter 7 bankruptcy case if there were assets available for administration and distribution. Settling Party's Financial Disclosures also showed that the Receiver would likely receive little if any recovery from any claim filed in Settling Party's bankruptcy case due to the minimal if any non-exempt assets for the Chapter 7 trustee to administer and distribute. Under these circumstances, the likelihood of success of the claims asserted in the Claw-Back Action was remote.

Finally, Settling Party funded the payments under the Settlement Agreement with the proceeds from the sale of his homestead property. The Receiver's analysis concluded that it was highly unlikely any claim could be made against Settling Party's homestead to access those funds because Settling Party claimed the Florida constitutional homestead exemption for that property and the facts and circumstances did not support claims to defeat that exemption. Settling Party, therefore, could have preserved and remained with the equity in his homestead property after receiving his Chapter 7 discharge effectively eliminating a significant source of recovery for the Receiver's claims in the Claw-Back Action.

The foregoing analysis shows that the Receiver was unlikely to achieve practical success, meaning money for the asserted claims, which weighs in favor of approval of the Settlement Agreement because the Receiver did receive a monetary recovery under its terms.

### b.  Range of Possible Recoveries

Speculating about the range of possible litigation recoveries is a necessary evil when weighing settlements for court approval. Here, the Receiver disclosed approximately $353,391.32 in damages in the form of the Net Gains in her Rule 26(a)(1) initial disclosures in the Claw-Back Action against Settling Party. The Receiver views $353,391.32 as the outer bounds of recovery, with the other end of the spectrum being $0, if Settling Party filed for Chapter 7 bankruptcy and

the Chapter 7 trustee determined there were no non-exempt assets available for administration and distribution. Again, a likely outcome from a review of the Financial Disclosures.

When considering the possible range of recovery, the Receiver, as a court-appointed fiduciary, employed prudent business judgment to arrive at her conclusion that the Settlement Payment was within the range of reasonably possible recoveries under the facts and Settling Party's financial position shown in the Financial Disclosures. The implementation of prudence and a "return on investment" analysis—meaning cost and time spent on entrenched litigation with the hope of a greater (but still realistic) recovery compared with the receipt of a lesser (but certain) recovery now—militated in favor of settling on the terms of the Settlement Agreement. The Receiver also gave value to saving costs and time, and ultimately desired to bring about a certain, quicker, and likely higher ultimate net recovery (after litigation expenses, time delays, and the impediment bankruptcy would have imposed). Implementation of that analytical framework resulted in the Receiver's satisfaction with the *certain* Settlement Payment *now*. It was unlikely that the Receiver would have obtained a greater distribution from Settling Party's bankruptcy estate than pursuant to the Settlement Agreement. As stated above, the source of recovery came from the sale of Settling Party's homestead property and that property would have been exempt and not part of Settling Party's bankruptcy estate. The Settlement Agreement provides for a recovery well within the range of possible recoveries, which weighs in favor of approval of the Settlement Agreement.

### c. Point of Reasonableness for Recoveries

"Settlement is not an exact science." *SEC v. Credit Bancorp, Ltd.*, 99 Civ. 11395 (RWS), 2001 U.S. Dist. LEXIS 21717, at *6 (S.D.N.Y. Dec. 20, 2001). Instead, in a federal equity receivership, the receiver must only enter into settlement agreements that best serve the interests

of all parties. *Id.* at *7 ("The Receiver has made a determination that the interests of all parties are best served by this settlement."). Courts in this district approve settlements in the range of 20% of the total asserted and claimed damages. *See SEC v. Creative Cap. Consortium*, LLC, 2014 U.S. Dist. LEXIS 196617, at *3.

The Settlement Payment of $111,424.33 represents approximately 32% of the total amount of damages the Receiver disclosed in her Rule 26(a)(1) initial disclosures against Settling Party ($353,391.32), which assumes collectability—a highly uncertain issue. The Settlement Payment falls squarely within the range approved by courts in this district, especially given substantial likelihood that Settling Party would have filed for Chapter 7 bankruptcy. *See SEC v. Creative Cap. Consortium*, LLC, at *3 ("In its FINRA claim, Receiver sought $5,863,960.80 from TD Ameritrade. Receiver has settled the TD Arbitration for $1,250,000, or 21% of the amount it sought.") (internal citations omitted). This factor weighs in favor of court approval of the Settlement Agreement.

### d. Complexity, Expense, and Litigation Duration

The Receiver took complexity, expense, and litigation duration into consideration when evaluating the terms of the Settlement Agreement. The Receiver concluded that this factor weighed heavily in favor of entering into the Settlement Agreement now. Each dollar in fees and costs that the Receiver and her team has incurred and will incur in pursuing her claims will come out of the Receivership Estate's recovery—effectively diluting it. *SEC v. Pinnacle Dev., Partners, LLC*, 2008 U.S. Dist. LEXIS 125910, at *8 ("The Receiver's willingness to enter into the Settlement Agreement is, in large part, based on his analysis of the costs of litigating his claims against Kunkel compared to his ability to recover substantially more through litigation than is being paid now, even if he were to obtain a judgment in a significantly higher amount."). Moreover, even assuming

10

a recovery from Settling Party's bankruptcy case was possible, the administration of that case would have diluted and delayed recovery even further because Chapter 7 trustee administrative expenses are paid prior to distribution to unsecured creditors and Chapter 7 cases can take months if not longer to conclude.

### e.   Substance and Amount of Settlement Opposition

No interested party has objected to or otherwise opposed the Settlement Agreement.  And, the SEC, which sought the appointment of the Receiver and whose mandate is to serve the interests of the investors defrauded by the Receivership Defendants, supports the Settlement Agreement. This endorsement, and the lack of opposition by any other interested party, weighs in favor of court approval of the Settlement Agreement.

### f.   Stage of Proceedings at Which Settlement Was Achieved

The stage of settlement and recovery in the Claw-Back Action is a paramount factor weighing in favor of this Court's approval of the Settlement Agreement. The Receiver and Settling Party entered into the Settlement Agreement early in the Claw-Back Action so the Receiver had not incurred substantial expense litigating with Settling Party. *See SEC v. Pinnacle Dev., Partners, LLC*, 2008 U.S. Dist. LEXIS 125910, at *8 ("The settlement is in the best interest of the Receiver Estate and allows the Receiver Estate, and ultimately the investors and other creditors, to recover money now, instead of a potential recovery after years of protracted litigation.").

The proposed settlement is the product of healthy negotiations by well-informed parties and provides for a payment of $111,424.33 to completely resolve the claims against Settling Party in the Claw-Back Action, without further expenditure of resources by the Parties or the Court. This recovery will provide the Receiver with additional liquidity now to maximize the value of the Receivership Estate and ultimately the amount of the final distributions to be made to the allowed

claimants under the claims process and to make those distributions sooner than would be possible if litigation continued in the Claw-Back Action and in a Chapter 7 bankruptcy filed by Settling Party.

**B. The Receiver Entered into the Settlement Agreement after a Thorough Investigatory and Analytical Process and Robust Settlement Negotiations.**

The Receiver, through counsel, engaged in an in-depth analysis of Settling Party's current financial condition to determine whether his adamancy that he would file a Chapter 7 bankruptcy case if a settlement was not reached with the Receiver was well-founded. The documents the Receiver reviewed are disclosed on an index attached to the Declaration Settling Party submitted along with the Settlement Agreement attesting to the veracity of the Financial Disclosures and related documents he provided to the Receiver.

After reviewing the Financial Disclosures, the Receiver, through her counsel, engaged in vigorous arm's length good faith negotiations with Settling Party to arrive at the terms of the Settlement Agreement. The settlement negotiations were fair, extensive, and ultimately fruitful by the Receiver obtaining full payment of $111,424.33 from Settling Party. As discussed above, the only asset of significant value Settling Party possessed was the equity in his homestead and he agreed to sell it and use 50% of that equity to fund the payment under the Settlement Agreement. In a Chapter 7 bankruptcy he likely could have preserved that equity for himself and given none to the Receiver. This point highlights the nature and extent of the settlement negotiations that resulted in the Settlement Agreement.

**C. The Receiver Provides Ample Due Process by Filing the Motion After Conferring with the SEC, Defendant Seaman, and Relief Defendants About the Settlement.**

The Court is empowered to fix the procedures for granting settlements in equity receivership cases, if due process has been afforded to affected persons. *See Elliot*, 953 F.2d at

1566. "Due process [generally] requires notice and an opportunity to be heard." *Id.* But the procedures required to satisfy due process vary "according to the nature of the right and to the type of proceedings." *Id.* At bottom, "a hearing is not required if there is no factual dispute." *Id.*

Here, the Receiver's counsel conferred with counsel for SEC, counsel for Defendant Seaman, and counsel for the Relief Defendants regarding the proposed settlement. As explained above, no party opposes the settlement and, in fact, the SEC supports it. The Settlement Payment falls within the acceptable range of settlements approved in SEC Enforcement Actions in this district. The Settling Party has made all of the payments required under the Settlement Agreement. Under these circumstances, approval of the Settlement Agreement without a hearing is proper if no objections are filed within a reasonable amount of time due to the lack of factual disputes.

## CONCLUSION

As the foregoing analysis demonstrates, the Receiver meets the requisite legal standard for approval of the Settlement Agreement so the Court should grant the Receiver's motion.

**WHEREFORE,** the Receiver respectfully requests the Court enter an order, in a form substantially similar to that of the proposed order attached as ***Exhibit B***: (i) granting this motion; (ii) approving the Settlement Agreement, which is attached as ***Exhibit A***; (iii) authorizing the Receiver and all other parties to take such actions as may be necessary and appropriate to implement the terms of the Settlement Agreement; (iv) retaining jurisdiction to enforce the terms of the Settlement Agreement; and (v) granting such other relief as this Court deems just and proper.

## S.D. FLA. L.R. 7.1 CERTIFICATION OF COUNSEL

The Receiver has conferred with counsel for the SEC, counsel for Defendant Seaman, and counsel for the Relief Defendants regarding the proposed settlement.  All such counsel confirmed that their respective clients have no objection to the Court's approval of the Settlement Agreement and the entry of the Settlement Approval Order sought herein.

Dated: July 22, 2025

/s/ *Kenneth Dante Murena*
Kenneth Dante Murena, Esq.
Fla. Bar Number 147486
kmurena@dvllp.com
Kristopher E. Pearson
Florida Bar Number 16874
kpearson@dvcattorneys.com
DAMIAN | VALORI | CULMO
1000 Brickell Avenue, Suite 1020
Miami, FL 33131
Telephone: (305) 371-3960

*Counsel for Melanie E. Damian, as Court-Appointed Receiver*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via electronic transmission via this Court's CM/ECF filing system on July 22, 2025 on all counsel or parties who have appeared in the above-styled action.

/s/ *Kenneth Dante Murena*
Kenneth Dante Murena, and
Kristopher E. Pearson,
*Counsel for Melanie E. Damian,*
*Court-Appointed Receiver*

15