**EXHIBIT A**

# SETTLEMENT AND RELEASE AGREEMENT BY AND BETWEEN MELANIE E. DAMIAN, AS RECEIVER OF THE RECEIVERSHIP DEFENDANTS, AND THEODORE L. STAUB III

THIS SETTLEMENT AND RELEASE AGREEMENT (the "Agreement") is made and entered into by and between **Melanie E. Damian**, as Receiver (the "Receiver") for and on behalf of Accanito Capital Group, LLC, Accanito Holdings, LLC, Accanito Equity, LLC, Accanito Equity II, LLC Accanito Equity III, LLC, Accanito Equity IV, LLC, Surge LLC, and Relief Defendant, Surge Capital Ventures, LLC (collectively, the "Receivership Defendants"), and **Theodore L. Staub III** ("Settling Party") (the Receiver and the Settling Party are each a "Party" and are collectively the "Parties"). Mr. Staub's spouse is a signatory to this agreement for the limited purposes set forth below.

## I. RECITALS

A. WHEREAS, on July 27, 2023, the United States Securities and Exchange Commission ("SEC") filed a Complaint in an action brought against the Receivership Defendants and Relief Defendants Jana Seaman and Valo Holdings Group, LLC in the United States District Court for the Southern District of Florida (the "Receivership Court") styled *United States Securities and Exchange Commission v. Brent Seaman, et al.*, Case No. 23-22791-CV-WILLIAMS (the "SEC Action").

B. WHEREAS, on July 27, 2023, the SEC filed its Unopposed Motion for Asset Freeze [ECF No. 4] and Agreed Motion and Memorandum of Law for Appointment of Receiver [ECF No. 5]. The Court granted both motions on October 27, 2023. *See* ECF No. 17 and 18, respectively. In the October 27, 2023 Order (the "Appointment Order"), the Receiver was appointed receiver for the "Receivership Estate" and the Receivership Defendants and was charged with carrying out the mandates of that Order. *See* ECF No. 18. The Court authorized the Receiver to "bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging her duties as Receiver." Such actions include, without limitation, actions under the Florida Uniform Fraudulent Transfer Act to recover transfers that the Receivership Defendants had made without receipt of reasonably equivalent value, while the Receivership Defendants were operating a Ponzi scheme and engaging in unlawful and fraudulent offerings in violation of the anti-fraud and registration provisions of federal securities laws.

C. WHEREAS, as part of the SEC Action, the SEC and its forensic accountants reviewed and analyzed the financial records of the Receivership Defendants, including their accounting records and various account statements, cancelled checks, deposit slips, and wire transfer confirmations from financial institutions and those records reveal that Settling Party invested a total of $413,571.08 with one or more of the Receivership Defendants and received back a total sum of $766,962.40 from the Receivership Defendants (collectively, the "Transfers"), resulting in a net gain of $353,391.32 (the "Net Gain").

15633953.v3

SETTLEMENT AND RELEASE AGREEMENT
Page 2 of 8

D.   WHEREAS, pursuant to the Appointment Order, the Receiver sent a letter to Settling Party advising him of the Receiver's intention to seek to recover the Net Gain that the Settling Party had received, for the benefit of the investors the Receivership Defendants had defrauded and invited discussions concerning pre-suit resolution, but such resolution pre-suit did not occur.

E.   WHEREAS, the Receiver sued Settling Party, along with other defendants, in the ancillary case captioned *Damian v. Staub,* Case No. 24-cv-997-JES-NPM ("M.D. Fla.") in the United States District Court for the Middle District of Florida ("Claw-Back Action").

F.   WHEREAS, bankruptcy counsel for Settling Party contacted the Receiver's counsel after Settling Party was personally served with process in the Claw-Back Action and informed the Receiver's counsel that Settling Party intended to file Chapter 7 bankruptcy instead of defending against the claims asserted in the Claw-Back Acton due to Settling Parties' financial condition.

G.   WHEREAS, counsel for the Receiver and Settling Party, on a *pro se* basis, commenced settlement negotiations that, among other things, included Settling Party providing the Receiver's counsel with substantial financial disclosures in the form of, including without limitation to, bank and investment account statements, federal income tax returns, a narrative explanation of his use of the Net Gains, deeds, a marital settlement agreement and other related documents, (collectively, the "Financial Disclosures"), which the Receiver agreed to keep confidential except as otherwise necessary to obtain a court order approving this Agreement.

H.   WHEREAS, after Settling Party's provision of the Financial Disclosures, the Receiver and the Settling Party negotiated in good faith a resolution of the Receiver's claims and any and all other disputes by and between the Parties, including, but not limited to, any disputes associated with the Transfers, the Net Gains, and the Claw-Back Action (collectively "Disputes"), which resolution provides for a payment by Settling Party to the Receiver and other terms and conditions, as more fully set forth below.

I.   WHEREAS, the Settling Party denies any wrongdoing.

**NOW THEREFORE**, in consideration of the mutual promises, exchanges and forbearances set forth below, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

## II.   GENERAL PROVISIONS

A.   **Recitals**: The Parties acknowledge and agree that the Recitals set forth hereinabove are integral terms, are true, accurate, and correct and are hereby incorporated into this Agreement and are not mere surplusage.

B.   **Settlement Amount, Payment Deadline, and Related Provisions**: Settling Party will pay or caused to be paid to the Receiver the amounts set forth below (the "Settlement Amount"), in the amounts and time periods set forth below, by wire transfer to the Receiver's fiduciary account for the Receivership Estate using the wire instructions that the Receiver's

SETTLEMENT AND RELEASE AGREEMENT
Page 3 of 8

counsel shall provide to Settling Party:

1. ***Cash Payment***: $10,000.00 (USD) upon execution of this Agreement, which is refundable if the Agreement is not approved by court order as described in this Agreement;

2. ***Crestview Property Payment***: Settling Party owns real property and improvements located at 1937 Crestview Way #171, Naples, FL 34119 ("Crestview Property"), which is designated as his homestead property under Florida law. Pursuant to this Agreement, Settling Party agreed to sell the Crestview Property and make certain payments from the net proceeds of the sale of that property to the Receiver. To implement the sale of the Crestview Property, Settling Party signed a listing agreement for the property on February 11, 2025, and placed the property on the market for sale on February 26, 2025 for $449,000. Settling Party represents and warrants the outstanding mortgage is approximately $195,000, real estate commissions are a total of 5% of the purchase price, and non-commission closing costs are estimated to be approximately $5,500.00. Settling Party agrees to pay to the Receiver at the closing of the sale of the Crestview Property 50% of the net sale proceeds (after payment of the mortgage loan balance, real estate commissions, and other closing costs) from any sale with a sale price of $430,000 or less ("Minimum Crestview Property Payment"). If the sale price of the Crestview Property exceeds $430,000, Settling Party agrees to pay at the closing of the sale of the Crestview Property, the Minimum Crest View Property Payment plus 90% of every dollar of the gross sale proceeds over $430,000.00. For example, if the sale price is $445,000.00, the closing agent shall calculate the net sale proceeds from a sale with a purchase price of $430,000.00 and pay the Receiver 50% of the net proceeds based upon that calculation and then pay the Receiver 90% of the $15,000.00 overage, which is $13,500.00.

C. **Court Approval of this Agreement**: This Agreement is subject to approval by the Court in the SEC Action and the Receiver agrees to take the steps necessary to obtain court approval. The Parties agree to request the Court presiding over the SEC Action to retain jurisdiction to enforce this Agreement in the order approving the agreement.

D. **Failure to Timely Pay Settlement Amount**: Settling Party and his spouse, who is a signatory to this Agreement, who resides with Settling Party in the Crestview Property, and who was married to Settling Party when he received the Transfers, agree that if Settling Party fails to timely pay the Settlement Amount as set forth in Section II.B. above, then the Receiver shall be entitled to the immediate entry by the United States District Court for the Southern District of Florida in the Claw-Back Action of a consent judgment in the amount of the greater of the Settlement Amount or $125,000, less any amounts paid by Settling Party to the Receiver through the date of entry of the consent judgment, in favor of the Receiver against Settling Party and his spouse. Settling Party and his spouse: (i) agree that the Receiver may obtain entry of such consent judgment by filing a Verified Motion for Entry of Consent Judgment in the Claw-Back Action no fewer than 14 days after providing email notice to Settling Party of Receiver's

SETTLEMENT AND RELEASE AGREEMENT
Page 4 of 8

intention to file such motion, and the Receiver may serve such motion on Settling Party by sending it to the email address of Settling Party used for email communications between the Receiver's counsel and Settling Party, (ii) consent to personal jurisdiction and venue in the United States District Court for the Southern District of Florida for purposes of the Verified Motion for Entry of Consent Judgment and entry of the consent judgment, (iii) shall waive all defenses and affirmative defenses, other than set-off or similar defense, and also waive the right to a jury trial on, the Verified Motion for Entry of Consent Judgment and the Receiver's claim for breach of this Agreement, and (iv) shall agree to the expedited entry of the consent judgment. Settling Party and his spouse agree to waive the protection of Florida Constitution Article X, Section 4, as applicable to the Crestview Property as to the Receiver's efforts to enforce this agreement and the consent judgment entered pursuant to this Agreement. Settling Party and his spouse also agree to consent to and do grant a lien in favor of the Receiver concerning the consent judgment entered pursuant to this Agreement. Settling Party and his spouse also agree to waive any protections concerning writs of garnishment entered to enforce the consent judgment enter pursuant to this Agreement. Finally, Settling Party and his spouse agree to execute and deliver to the Receiver the agreement to waive the exemptions to writs of garnishment provided by section 222.11, Florida Statues, the form of which is attached as ***Exhibit A*** to this Agreement.

    E.    **Conditions for Release & Release**: In consideration of Settling Party entering into this Agreement, and provided that: (i) the Court in the SEC Action has approved this Agreement; and (ii) 92 calendar days have passed from the date that the Receiver received the Settlement Amount and Settling Party has not filed or been the subject of a bankruptcy case under Title 11 of the United States Code, 11 U.S.C. 101, *et seq.*, the Receiver shall and will be deemed to release and forever discharge Settling Party and his spouse from any and all claims, manner of claims, liabilities, demands, obligations, actions, causes of action, injuries, complaints, levies, fines, charges, interest, suits, debts, indebtedness, duties, obligations, rights, damages, punitive damages, attorneys' fees, costs, expenses and compensation of any nature whatsoever and of any kind, based on any legal, statutory or equitable theory, right of action or otherwise (whether arising under federal, state or local law or regulation, statute, or common law and whether by any federal, state or local taxing or regulatory authority or agency), foreseen or unforeseen, known or unknown, matured or unmatured, liquidated or unliquidated, absolute or contingent, accrued or not accrued, actual or potential, which the Receiver, on behalf of the Receivership Estate and/or the Receivership Defendants, now has or which may hereafter accrue or otherwise be acquired against Settling Party, regardless of whether any other information obtained by the Receiver after the date of this Agreement substantiates any additional claims or causes of action the Receiver could have brought against Settling Party. This release is to be interpreted as broadly as possible. This release specifically includes all claims which have been or could be brought or asserted against Settling Party by the Receiver, including without limitation to the Disputes, in any action arising from or in any way associated with the SEC Action, including claims related to the SEC Action's Relief Defendants, Jana Seaman and Valo Holdings Group, LLC. ***This release does not include, and specifically excludes***, any claims the Receiver has or may have against Settling Party for, or any rights of the Receiver based on, Settling Party's breach of this Agreement for failure to pay the Settlement Amount required in Section II.B. above, or the right to seek entry of the consent judgment upon such failure granted in Section II.D. above, which claims and rights are **not** released, waived or discharged. Receiver also retains all rights to any proceedings supplementary to enforce such judgment including

SETTLEMENT AND RELEASE AGREEMENT
Page 5 of 8

without limitation by seeking to garnish, levy, or execute on any property of which Settling Party have a title and/or beneficial interest, and by asserting claims to recover assets of Settling Party transferred in contravention of applicable law following execution of this Agreement. For avoidance of doubt, and notwithstanding any reading of this Agreement to the contrary, these releases do not release claims the Receiver, the Receivership Estate, or the Receivership Defendants have against or in connection with any other individuals and/or Defendants, including their insurers or reinsurers, which are not the Settling Party or his spouse.

In consideration of Receiver's release and discharge of any and all claims against Settling Party and his spouse required herein, Settling Party and his spouse shall and hereby do release and forever discharge the Receiver, the Receivership Estate, and the Receivership Defendants from any and all claims, manner of claims, liabilities, demands, obligations, actions, causes of action, injuries, complaints, levies, fines, charges, interest, suits, debts, indebtedness, duties, obligations, rights, damages, punitive damages, attorneys' fees, costs, expenses and compensation of any nature whatsoever and of any kind, based on any legal, statutory or equitable theory, right of action or otherwise (whether arising under federal, state or local law or regulation, statute, or common law and whether by any federal, state or local taxing or regulatory authority or agency), foreseen or unforeseen, known or unknown, matured or unmatured, liquidated or unliquidated, absolute or contingent, accrued or not accrued, actual or potential, which Settling Party or his spouse now have or which may hereafter accrue or otherwise be acquired against the Receiver, the Receivership Estate, and/or any of the Receivership Defendants, regardless of whether any other information obtained by Settling Party or his spouse after the date of this Agreement substantiates any additional claims or causes of action Settling Party or his spouse could have brought against the Receiver, the Receivership Estate, and/or the Receivership Defendants. This release is to be interpreted as broadly as possible.

F. **No Admission of Liability:** Nothing herein shall be construed as an admission of liability by Settling Party, any such liability being expressly disputed and denied, and shall never be construed as an admission(s) by Settling Party.

G. **Financial Disclosure Representation and Warranty:** Settling Party represents and warrants to the Receiver that the declaration provided to the Receiver, a copy of which is attached as *Exhibit B* to this Agreement is true and correct and made under the penalties of perjury under the laws of the United States, and that the Financial Disclosures Settling Party provided to the Receiver were complete, accurate, and contained no material misrepresentations, and truthfully and fully represent Settling Party's financial condition at the time of his entry into this Agreement. Settling Party agrees that his provision of the Financial Disclosures and their accuracy were a material inducement for the Receiver to enter into this Agreement. Settling Party acknowledges that the Receiver relied upon his Financial Disclosures in entering into this Agreement and that the Receiver would not have entered into this Agreement but for the information contained in the Financial Disclosures. Settling Party acknowledges and agrees that the Financial Disclosures were provided in writing to the Receiver prior to and to induce the Receiver to enter into this Agreement and this Agreement creates a debt for money owed by Settling Party and his spouse to the Receiver.

H. **Bankruptcy-Related Provisions:** Settling Party, as a material inducement for the Receiver's entry into this Agreement, irrevocably agrees that in the event he files for

5

SETTLEMENT AND RELEASE AGREEMENT
Page 6 of 8

bankruptcy or is the subject of a bankruptcy petition and order for relief prior to the Receiver's receipt of the full amount of the Settlement Amount, the sum of the greater of the Settlement Amount or $125,000, less any payments made to the Receiver pursuant to this Agreement, shall be a non-dischargeable debt in favor of the Receiver pursuant to 11 U.S.C. § 523 in any bankruptcy case in which he is the debtor, whether voluntary or involuntary. Settling Party also agrees to not object and waives any defenses to the amount, extent, validity, or priority of any claim the Receiver files in any bankruptcy case in which he is the debtor, whether voluntary or involuntary. Settling Party also agrees to waive the protections of the automatic stay under 11 U.S.C. § 362 and agrees to consent to relief from the automatic stay in favor of the Receiver relating to any motion the Receiver files seeking such relief. The consideration provided by the Receiver to the Settling Party herein constitutes good and valuable consideration for all of the provisions in this Agreement, including without limitation these bankruptcy-related provisions and these bankruptcy-related provisions were negotiated as part of and are integral to this Agreement.

      I.      **Claim**: Settling Party waives any claim he may have relating to the Receivership Estate and/or the SEC Action and shall have no claim against and receive no distribution from the Receivership Estate.

      J.      **Dismissal of Settling Party from Claw-Back Action**: Within seven days after the latter of: (i) execution of this Agreement, (ii) court approval of this Agreement, and (iii) the Receiver's receipt of the Settlement Amount, the Receiver shall dismiss Settling Party from the Claw-Back Action, with prejudice, with each Party to bear its own fees and costs, based upon settlement memorialized in this Agreement and approved by the Court in the SEC Action.

### III.    WARRANTY OF CAPACITY TO EXECUTE AGREEMENT

The Parties represent and warrant that no other person or entity has or has had any interest in the claims, demands, obligations, or causes of action referred to in this Agreement; that the Receiver has the sole and exclusive right to receive sums specified in it; and that they have not sold, assigned, transferred, conveyed, or otherwise disposed of any of the claims, demands, obligations, or causes of action referred to in this Agreement.

### IV.    ENTIRE AGREEMENT AND SUCCESSORS-IN-INTEREST

The Parties agree that this Agreement contains the entire agreement between the Receiver and Settling Party with regard to the matters set forth in it and shall be binding upon and inure to the benefit of their respective successors and assigns. There are no other understandings or agreements, verbal or otherwise, in relation thereto between the Parties, except as herein expressly set forth. There have been no representations not set forth herein that the Parties have relied upon when entering into this Agreement. Should any provision of this Agreement require interpretation or construction, the Parties agree that all Parties have participated in the drafting of this document and no presumption regarding construing the document against one Party shall apply.

SETTLEMENT AND RELEASE AGREEMENT
Page 7 of 8

## V. PARTIES' OPPORTUNITY TO BE REPRESENTED BY COUNSEL

The Parties acknowledge that each has had the opportunity to consult with the attorney of their choice. Furthermore, the Parties to this Agreement represents and warrants that they are entering into this Agreement of their own free will, without having been subjected to any form of duress or coercion of any kind.

## VI. EXECUTION

This Agreement may be executed in counterparts, and such execution shall be valid and binding on the Parties. A digital and/or facsimile copy of a Party's signature on page 8 of this Agreement shall be deemed an original and may be used to establish that Party's execution of the Agreement.

## VII. SEVERABILITY

In the event any provision of this Agreement is found to be invalid by any court of law, the remaining provisions of the Agreement shall remain valid and binding on the Parties.

## VIII. MODIFICATION

The Parties agree that this Agreement may only be modified or amended in any respect in a writing signed by both parties. Oral modifications or amendments are expressly prohibited. Unilateral modifications or amendments are also expressly prohibited.

## IX. JURISDICTION AND VENUE FOR LITIGATION OF DISPUTES

In the event of a dispute as to the interpretation, enforcement, application, or violation of this Agreement, the Parties consent, understand, and agree that the United States District Court for the Southern District of Florida shall have exclusive jurisdiction, and be the exclusive venue to resolve any such dispute and to award to the prevailing Party the attorneys' fees and costs incurred in connection with the enforcement of this Agreement and in any proceedings supplementary necessary for execution of any judgment entered pursuant to Section II.D. above.

## X. CONSTRUCTION BY STATE LAW

This Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of Florida to the extent state law is applicable, without giving effect to principles of conflicts of law.

SETTLEMENT AND RELEASE AGREEMENT
Page 8 of 8

## XI. ATTORNEYS' FEES AND COSTS

The Parties agree that they each shall bear its own attorneys' fees and costs incurred arising from the Disputes, including through the entry of this Agreement. The Parties further agree that the prevailing party in an effort to enforce this Agreement, including in any proceedings supplementary necessary for execution of any judgment entered pursuant to Section II.D. above, shall be entitled to recovery of attorneys' fees and costs from the non-prevailing party.

## XII. FURTHER COOPERATION

The Parties agree to further cooperate with each other and execute any additional documents that are reasonable and necessary to achieve the settlement memorialized by this Agreement.

AGREED TO BY:

**THEODORE L. STAUB, III**

Sign: _[signature]_

Date: May 15, 2025

**MELANIE E. DAMIAN, AS RECEIVER FOR RECEIVERSHIP DEFENDANTS**

Sign: _____

Date: _____

**DOROTHY STAUB**

Sign: _Dorothy Staub_

Date: May 15, 2025

SETTLEMENT AND RELEASE AGREEMENT
Page 8 of 8

## XI.  ATTORNEYS' FEES AND COSTS

The Parties agree that they each shall bear its own attorneys' fees and costs incurred arising from the Disputes, including through the entry of this Agreement. The Parties further agree that the prevailing party in an effort to enforce this Agreement, including in any proceedings supplementary necessary for execution of any judgment entered pursuant to Section II.D. above, shall be entitled to recovery of attorneys' fees and costs from the non-prevailing party.

## XII.  FURTHER COOPERATION

The Parties agree to further cooperate with each other and execute any additional documents that are reasonable and necessary to achieve the settlement memorialized by this Agreement.

AGREED TO BY:

**THEODORE L. STAUB, III**

Sign: _____

Date: _____

**MELANIE E. DAMIAN, AS RECEIVER FOR RECEIVERSHIP DEFENDANTS**

Sign: _____[signature]_____

Date: __5.9.2025__

**DOROTHY STAUB**

Sign: _____

Date: _____

Exhibit A

## WAIVER UNDER SECTION 222.11(B), FLORIDA STATUTES

IF YOU PROVIDE MORE THAN ONE-HALF OF THE SUPPORT FOR A CHILD OR OTHER DEPENDENT, ALL OR PART OF YOUR INCOME IS EXEMPT FROM GARNISHMENT UNDER FLORIDA LAW. YOU CAN WAIVE THIS PROTECTION ONLY BY SIGNING THIS DOCUMENT. BY SIGNING BELOW, YOU AGREE TO WAIVE THE PROTECTION FROM GARNISHMENT.

**THEODORE L. STAUB, III (DEBTOR)**

Sign: _[signature]_

Date: May 15, 2025

**DOROTHY STAUB (DEBTOR)**

Sign: _Dorothy Staub_

Date: May 15, 2025

I have fully explained this document to the debtors.

**MELANIE E. DAMIAN, AS RECEIVER FOR RECEIVERSHIP DEFENDANTS**

Sign: _[signature]_

Date: 7.22.2025

**Exhibit B**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| MELANIE E. DAMIAN, as Receiver of ACCANITO EQUITY, LLC; ACCANITO EQUITY II, LLC; ACCANITO EQUITY III, LLC; ACCANITO EQUITY IV, LLC; ACCANITO CAPITAL GROUP, LLC; ACCANITO HOLDINGS, LLC; SURGE, LLC, <br><br>        Plaintiff, <br><br>v. <br><br>THEODORE L. STAUB, III, individually; ANGELA D. DENEASE, individually; ANTHONY M. LAWHON, P.A., a Florida corporation; MONTGOMERY STREET REALTY, LLC, a Florida limited liability company, <br><br>        Defendants. <br>_____/ | Ancillary Case No: 2:24-cv-997-JES-NPM |

**DECLARATION OF THEODORE L. STAUB, III REGARDING THE FINANCIAL DISCLOSURES HE PROVIDED TO THE RECEIVER <u>IN SUPPORT OF THEIR SETTLEMENT AGREEMENT</u>**

1. My name is Theodore L. Staub, III, and I make this declaration under penalties of perjury based upon my personal knowledge of the facts stated below.

2. I am familiar with the allegations of the Amended Complaint [ECF No. 5] in this ancillary case because I reviewed the document after I was personally served with process at my home on December 5, 2024.

3. After being served with process as set forth above, I consulted with bankruptcy counsel for the purposes of filing an individual chapter 7 bankruptcy case due to my financial circumstances and the potential liability associated with this lawsuit.

4. The bankruptcy attorney with whom I consulted communicated with the Receiver's counsel, which then lead to my direct communications with the Receiver's counsel, extensive settlement negotiations, and my provision of financial documents, information, and other disclosures (as discussed in detail below).

5. At the Receiver's request, I provided the documents listed on Exhibit A ("Financial Disclosures").

6. The settlement negotiations culminated with my execution of a Settlement Agreement ("Agreement") with the Receiver, to which this declaration is attached as *Exhibit B*, that if fully performed by me, completely resolves this lawsuit and my involvement with the Receivership Defendants and Receivership Estate (as defined in the Agreement).

7. The Financial Disclosures are complete, true and accurate, and contain no material misrepresentations.

8. The Financial Disclosures truthfully and fully represent my financial condition at the time of my entry into the Agreement.

9. I agree that the provision of the Financial Disclosures and their accuracy were a material inducement for the Receiver to enter into the Agreement.

10. I acknowledge that the Receiver relied upon the Financial Disclosures in entering into the Agreement and that the Receiver would not have entered into the Agreement but for the information contained in the Financial Disclosures.

11. I acknowledge and agree that the Financial Disclosures were provided in writing to the Receiver prior to and to induce the Receiver to enter into the Agreement and the Agreement creates a debt for money owed by me and my spouse to the Receiver.

Under penalties of perjury, I declare that I have read the foregoing and that the facts contained herein are true and correct.

Dated: May 15, 2025.

_____
Theodore L. Staub, III

# THEODORE L. STAUB, III FINANCIAL DISCLOSURE INDEX

1. Sworn Financial Disclosure Form (7/2024)
2. Federal Income Tax Returns (2019-2023)
3. Documents showing Antis Media 2024 Income
4. Documents related to 2018 Divorce in Circuit Court in and for Collier County, Florida
5. Documents related to the Purchase (2018) and Refinancing (2020) of the Crestview Property
6. Credit Card Statements (2023-2024)
7. Bank Statements (2023-2024)
8. Documents relating to Vehicle 2008 Mercedes (64,991 miles) $7,000 2/2024 Purchase
9. Account Statements (2023-2024)
10. Documents showing payments to Roland Jones, Esq. (Attorney who wrote response to the Receiver's Demand Letter)
11. Narrative regarding Payments to Internal Revenue Services (2023-2024), Property Taxes (2024), and Other Large Payments (2024)
12. Bank Statements (2023-2024)
13. Documents showing Resignation of Social Membership at The Club at the Strand and Nature of Membership (12/2024)
14. Credit Card Statements (12/2024)
15. Credit Card Statements (12/2024)
16. Credit Card Statements (12/2024)
17. Credit Card Statements (12/2024)
18. Loan Statement (12/2024)
19. Credit Card Statement (11/2024)
20. Narrative regarding disposition of November 2022 Transfer from Surge, LLC